IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-00532-EAG13 |
| MARTHA RODRIGUEZ LUNA | Chapter 13 |
| Debtor(s) | ADVERSARY NUMBER: 22-00017-EAG |
| MARTHA RODRIGUEZ LUNA | |
| Plaintiff(s) | |
| CICA COLLECTION AGENCY, INC. | |
| Defendant(s) | FILED & ENTERED ON APR/03/2025 |

**OPINION AND ORDER**

The debtor, Martha Rodriguez, sued CICA Collection Agency, Inc., claiming it violated her rights under the Fair Debt Collection Practice Act. Both Ms. Rodriguez and CICA filed motions for summary judgment, which are pending before the court. There being no material fact in controversy, the court for the reasons stated below grants CICA's motion for summary judgment dismissing the complaint and denies Ms. Rodriguez's motion for partial summary judgment on liability in her favor.

**I. Jurisdiction**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

## II. **Ms. Rodriguez's Argument**

In the complaint, Ms. Rodriguez alleged that a letter dated January 17, 2022, was the first collection letter CICA sent to her. Although she grounded the complaint on the January 17 letter, in her motion for summary judgment, she expressly changed tack after unearthing in discovery two prior letters sent by CICA to her. The first collection letter is dated November 17, 2021. Ms. Rodriguez does not claim that the November 17 letter violated her rights under the Fair Debt Collection Practice Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"). But she does allege that the second letter, dated December 13, 2021, violated the FDCPA. According to Ms. Rodriguez, the December 13 letter violated section 1692g of the FDCPA because it was sent during the "30-day validation period," offered to settle her debt at a discounted amount, and required her to communicate "as soon as possible" with CICA. This she claims unlawfully shortened, contradicted, and confused Ms. Rodriguez's right to seek validation or verification of the debt. As a consequence, the December 13 letter unlawfully "overshadowed" the November 17 letter.

## III. **CICA's Position**

CICA argues that under the FDCPA a debt collector may engage in collection activities during the 30-day validation period "unless the consumer has notified the debt collector in writing that the debt . . . is disputed or . . . requests the name and address of the original creditor." 15 U.S.C. § 1692g(b). Section 1692g(b) of FDCPA states that "collection activities and communications may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). The November 17 letter clearly set out Ms. Rodriguez's rights under the FDCPA. And the December 13 letter neither confused, contradicted, shortened, nor overshadowed the rights set out in the prior letter.

## IV. Uncontested Facts

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

1. CICA is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6). (Dkt. No. 29, p. 3; Dkt. No. 39, p. 4.)

2. On November 17, 2021, CICA sent an initial collection letter to Ms. Rodríguez. (CICA's Uncontested Fact No. 3, Exhibit 1, Dkt. No. 39.)

3. The November 17, 2021 collection letter included: (a) the name of the creditor for whom CICA is collecting a debt, First Bank PR; (b) the amount of the debt, $15,499.34; (c) that CICA is a collection agency trying to collect a debt; (d) Ms. Rodriguez's right to dispute the debt within 30 days in writing and that CICA would thereafter need to verify the debt and mail a copy of the verification to Ms. Rodriguez; and (e) Ms. Rodriguez's right to request the name and address of the original creditor. (Exhibit 1 and 4, Dkt. No. 39.)

4. On December 13, 2021, CICA sent a second letter to Ms. Rodriguez. The second letter offered a 50% discount of the debt, subject to the creditor's authorization; required Ms. Rodriguez to communicate with the collection agency to verify eligibility; and allowed Ms. Rodriguez until December 29, 2021, to pay the discounted amount. (Exhibit 2, and 4, Dkt. No. 39.)

5. On January 17, 2022, CICA mailed a third letter to Ms. Rodriguez. The third letter informed her the amount of the debt and advised Ms. Rodriguez to pay within five days. (Exhibit No. 3 and 4, Dkt. No. 39.)

6. Ms. Rodriguez did not dispute the debt nor communicate with CICA. (CICA's Undisputed Fact No. 4.)

## V. Legal Analysis and Discussion

a. Summary Judgment Standard

The standard for summary judgment is well-known. Pursuant to Rule 56 made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (Quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28,34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter

of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences. . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential fact finding, including the sifting of inferences." Id.

   b.   The Fair Debt Collection Practice Act

"The FDCPA was enacted to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against collection abuses.'" Martel v. LVNV Funding, LLC (In re Martel), 539 B.R. 192, 194-195 (Bankr. D. Me. 2015) (quoting 15 U.S.C. § 1692e). "The Act 'prohibit[s] a broad range of conduct by debt collectors.'" LeDoux v. JP Morgan Chase, N.A., 2012 U.S. Dist. LEXIS 166756, *23 (D. N.H. Nov. 20, 2012) (quoting Moore v. Mortgage Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 123 (D. N.H. 2012). It "seeks to eliminate 'abusive, deceptive, and unfair debt collection practices' by regulating the type and number of contacts a 'debt collector' can make with a debtor." Karim v. Bank of Am., N.A., 2011 U.S. Dist. LEXIS 109506, *22 (D. R.I. May 6, 2011) (quoting Murangi v. Texas Guaranteed, 646 F. Supp. 2d 804, 811 (E. D. La.2009).

"In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA."

Roman-Perez v. Operating Partners Co. LLC (In re Roman-Perez), 527 B.R. 844, 862 (Bankr. D. P.R. 2014).

"When considering whether a particular collection notice violates sections 1692e and 1692g of the FDCPA, courts look to whether the objective 'least sophisticated debtor' would find the notice improperly threatening or misleading." Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 474-75 (D. Mass. 2013). "The 'least sophisticated consumer' is an objective standard." Id. "In applying the least sophisticated customer standard, 'courts have held that collection notices violate the FDCPA if the notices contain language that overshadows or contradicts other language that informs consumers of their rights.'" Skvarla v. MRS BPO, LLC, 2021 U.S. Dist. LEXIS 129323, *4 (S.D. N.Y. July 12, 2021).

In this case, neither party disputes that the collection activity against Ms. Rodriguez relates to a consumer debt. And the parties agree that CICA is a debt collector as defined in 15 U.S.C. § 1692a. Ms. Rodriguez therefore satisfies the first two elements of a FDCPA claim. The controversy hinges on the December 13 letter which was sent during the 30-day validation period. Ms. Rodriguez states that the December 13 letter overshadowed the November 17 letter and confused her as to her rights under the FDCPA as set out in the initial communication.

Section 1692g(b) of the FDCPA states in its relevant part:

If the consumer notifies the debt collector in writing within [30 days of receipt of the validation notice] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Hence, so long as the consumer does not dispute or request validation of the debt in writing, the debt collector is not required to suspend collection efforts. However, collection notices during said period cannot contain language that overshadow or contradict other language that informs consumers of their rights.

"Unless the consumer disputes the debt, the debt collector is generally free to continue its collection activities and to communicate with the consumer during the thirty-day 'validation period.'" Ellis v. Solomon, 591 F.3d 130, 132 (2nd Cir. 2010). "[T]he validation period 'is not a grace period; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity.'" Ellis v. Solomon, 591 F.3d. at 135. "While debt collectors are largely free to continue collection activities during the validation period," courts have "held that validation period collection activities and communications must not 'overshadow' or 'contradict' the validation notice." Id. "'Overshadowing' occurs when the format of a letter does not allow the consumer to see the validation notice, leaving him 'in the dark about his dispute and/or validation rights.'" O'Neill v. Radius Glob. Sols., LLC, 2022 U.S. Dist. LEXIS 174703, *11 (D. N.J. Sept. 27, 2022). And language that insinuates that payment is due before the dispute period expires is inconsistent and contradictory to the validation notice. O'Neill v. Radius Glob. Sols., LLC, 2022 U.S. Dist. LEXIS 174703 at *12. A deadline that would run contrary to the thirty-day deadline found in the validation provision would be contradictory. See Panto v. Prof'l Bureau of Collections, 2011 U.S. Dist. LEXIS 23328 (D. N.J. March 7, 2011).

"[C]ourts evaluate collection letters for both 'form' and 'substance.'" O'Neill v. Radius Glob. Sols., LLC, 2022 U.S. Dist. LEXIS 174703 at *11.

The December 13 letter states as follows:

> RE: 884-2111-0012
> **Amount: *$15,499.34***
> *2nd **Notice***

Dear Mr(s). MARTHA RODRÍGUEZ-LUNA,

You have an outstanding debt with our client FIRST BANK PR (FIA CARD-BANK OF AMERICA) with a balance of ***$15,499.34***. We are giving you the opportunity to settle said debt by adjusting the total amount owed; you will be granted a discount of ***50% (SUBJECT TO OUR CLIENT'S APPROVAL, CERTAIN RESTRICTIONS APPLY)*** after which the balance to be paid would be ***$7,749.67***.

The payment must be received at our office on or before ***December 29, 2021***. There is no additional time, and this offer does not apply to payment plans. ***You must call to verify your eligibility and learn the requirements for this offer, or if you need***

***more time.*** We hope you can take advantage of this opportunity, which would save you ***$7,749.67*** and solve the dispute between you and your creditor. ***This balance is not final, as it may accrue interest, fees, and/or penalties.***

Remember that this account is due and payable. If a payment agreement is not reached, we will be forced to refer this account to our attorney, who will then recommend the best course of action for us to take in relation to the account and the measures that should be implemented to collect it.

If you have any questions, please call me at the telephone numbers provided above; we are eager to help you settle this matter, but it is essential that you contact us as soon as possible.

Ms. Rodriguez alleges that because the validation period had not expired when the December 13 letter was sent, it "enticed" her to pay the discounted amount within the same 30-day window. Ms. Rodriguez's alleges that:

"CICA's second collection letter of December 13, 2021, not only encroached upon the plaintiff's thirty-day period to seek verification or validation of the debt, but contradicted and confused her rights by enticing her with a 50% discount of the debt in full satisfaction thereof and urging her to communicate as soon as possible to resolve the matter within that same thirty-day window."

(Dkt. No. 29, p. 9.) Ms. Rodriguez argues that Jacobson v. Healthcare Fin. Servs., 516 F.3d 85 (2d Cir. 2008) supports her position. But Jacobson does not. In Jacobson, the Second Circuit found that even when the letter explicitly required either payment or a notice of dispute to be sent within 30 days, the least sophisticated debtor would understand that she had the option to submit a notice of dispute, rather than pay the claimed sum. The communication was found to violate the FDCPA for other reasons not relevant here.

The court notes that in this case the 30-day validation period would have expired on December 17, 2021, and the deadline to pay at the discounted amount was December 29, 2021. Hence, the time to pay at a discounted amount was not shortening or limiting the validation period as alleged by Ms. Rodriguez. The offer to pay at a discounted amount did not expire during the validation period window, and the language of the offer was not confusing or contradictory to the language of the first communication. "If a debt collector complies with the validation notice requirements pursuant to Section 1692g, '[t]here is nothing improper about making a settlement offer.'" Schoulars v. Halsted Fin. Servs. LLC, 2022 U.S. Dist. Lexis 164785, *10 (D. N.J. Sept. 12, 2022).

"A debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter." Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 104 (1st Cir. 2014). "Whether the controversy centers on overshadowing or inconsistency, the inquiry reduces to whether a particular collection letter would confuse the unsophisticated consumer." Id. "A communication subject to the FDCPA is deceptive if 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" Pistone v. Halsted Fin. Servs., LLC, 2022 U.S. Dist. LEXIS 31173, *7 (Feb. 22, 2022) (quoting Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008).

Here, the language included in the letter sent on December 13 letter is not incompatible with the dispute and validation language of the November 17, 2021, letter. The time to take advantage of the discounted amount was to expire after the validation period and, therefore, did not shortened or contradicted Ms. Rodriguez's dispute and validation rights. The advice to call "as soon as possible" to clarify any questions and to settle the matter does not overshadow or contradict her rights either. It just gives her the opportunity to inquire about the settlement offered by CICA. And CICA was not prohibited by the FDCPA to send the second letter.

The court finds that the language in the December 13, 2021, letter is objectively clear and creates no confusion regarding Ms. Rodriguez's rights. Ms. Rodriguez does not allege that she had disputed the debt and, therefore, the letter sent on December 13, 2021, is not a prohibited communication in violation of the FDCPA.

## VI. Conclusion

For the reasons stated above, the court finds that CICA sent its initial communication on November 17, 2021, and it is undisputed that the initial communication complied with the requirements of §1692g of the FDCPA. The second letter sent on December 13, 2021, is objectively clear and creates no confusion regarding Ms. Rodriguez's rights. The language included in the letter sent on December 13, 2021, is not incompatible with the dispute and validation language of the November 17, 2021, letter. And the time to pay at a discount did not impermissibly shorten the validation period.

Therefore, the court grant's summary judgment in favor of CICA dismissing the complaint (Dkt. No. 39). Consequently, the court denies Ms. Rodriguez's motion for partial summary judgment on liability. (Adv. Dkt. No. 29).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3 day of April, 2025.

Edward A. Godoy
United States Bankruptcy Judge